**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION**

| | | |
|---|---|---|
| FERMI INC., | § | |
| | § | |
|     Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. ___5:26-cv-100___ |
| | § | |
| TOBY R. NEUGEBAUER, | § | |
| INDIVIDUALLY AND IN HIS | § | |
| CAPACITY AS TRUSTEE OF THE | § | |
| MELISSA A. NEUGEBAUER 2020 | § | |
| TRUST; VICKSBURG INVESTMENTS | § | |
| MANAGEMENT LLC; DAVID A. | § | |
| DAGLIO; CHARLES M. ELSON; | § | |
| SHEILA HOODA; JOHN T. JIMENEZ, | § | |
| and SUNGHEE JANET YANG, | § | |
| | § | |
|     Defendants. | § | |

**PLAINTIFF FERMI INC.'S VERIFIED COMPLAINT, APPLICATION FOR
TEMPORARY RESTRAINING ORDER, AND REQUEST FOR PRELIMINARY
INJUNCTION**

Plaintiff Fermi Inc. ("Fermi" or the "Company") files its Verified Complaint and Application for Temporary Restraining Order and Preliminary Injunction against Toby R. Neugebauer (individually and in his capacity as trustee of the Melissa A. Neugebauer 2020 Trust), Vicksburg Investments Management LLC, David A. Daglio, Charles M. Elson, Sheila Hooda, John T. Jimenez, and Sunghee Janet Yang (collectively, "Defendants") and respectfully shows the following:

## I.    PRELIMINARY STATEMENT

1.    After being removed from his positions as Fermi's President and CEO and subsequently terminated as an employee, Toby Neugebauer has waged a campaign to wrest control of the Company from its Board of Directors. In his final hours as CEO, knowing the Board was meeting soon to exercise its fiduciary duties to oust him from his officer positions due to his

continued misconduct and the havoc it wreaked on the Company's relationships with key counterparties and stakeholders—Mr. Neugebauer purported to use his position as CEO to call a special meeting of shareholders to take place after his impending removal, on May 29. On the agenda for that meeting would be stuffing the Board with Neugebauer-loyalists so he could take over the Company and then sell the business in furtherance of his own personal agenda, at the expense of Fermi's other shareholders. Mr. Neugebauer's attempt to call a special meeting was invalid and, in any event, later formally cancelled by the Company's current CEOs. Nevertheless, Mr. Neugebauer continues to act as if there will be a special meeting of shareholders on May 29, even going so far as to file formal documents with the United States Securities and Exchange Commission (the "SEC") earlier this week, on May 5, showing that he soon plans to solicit other shareholders' votes for that phantom meeting. As a shareholder, Mr. Neugebauer has every right to vote his shares how he wishes, and to work within the bounds of Fermi's governing documents and Texas law to seek the changes he desires, no matter how misguided they may be. But he has no right to mislead Fermi's other shareholders (Mr. Neugebauer and his group claim to hold approximately 40% of Fermi's stock) into thinking he is gathering votes for a meeting that does not exist, or to take steps in furtherance of such a meeting in contravention of the Company's governing documents and the law.

2.      Through this action, Fermi seeks emergency relief (1) declaring that there is no Special Meeting of Fermi Shareholders scheduled to be held on May 29, 2026 (the "Purported Meeting"), and (2) enjoining Defendants (a) from taking any actions in furtherance of holding the Purported Meeting, including but not limited to any actions to distribute or file a definitive proxy statement or other soliciting materials in connection with the Purported Meeting or to solicit proxies in connection with the Purported Meeting; (b) from engaging in any solicitation by means of any proxy statement, form of proxy, notice of meeting, or other communication, written or oral,

containing any statement stating, suggesting, or indicating that the Purported Meeting has been called or will be held, and (c) from taking any other action to hold or deem to hold the Purported Meeting.

## II.   PARTIES

3.      Plaintiff Fermi Inc. is a Texas corporation with its principal office at 620 S. Taylor Street, Suite 301, Amarillo, Texas 79101.

4.      Defendant Toby R. Neugebauer, in his individual capacity and in his capacity as trustee of The Melissa A. Neugebauer 2020 Trust (the "Neugebauer 2020 Trust"), is an individual residing at 10777 Strait Lane, Dallas, Texas 75229. Mr. Neugebauer may be served at 10777 Strait Lane, Dallas, Texas 75229.

5.      Defendant Vicksburg Investments Management LLC ("Vicksburg") is a Delaware limited liability company with its principal office located at 10777 Strait Lane, Dallas, Texas 75229. Vicksburg may be served through its registered agent, Capitol Services, Inc., 108 Lakeland Avenue, Dover, Delaware 19901.

6.      Defendant David A. Daglio is an individual residing at 31 Hyslop Road Extension, Brookline, Massachusetts, 02445-5744.

7.      Defendant Charles M. Elson is an individual residing at 1002 Westover Road, Wilmington, Delaware, 19807-3017.

8.      Defendant Sheila Hooda is an individual residing at 2298 Stotesbury Way, Wellington, Florida, 33414-6444.

9.      Defendant John T. Jimenez is an individual residing at 1000 Crystal Lake Drive, Lake Crystal, Minnesota, 56055-2419.

10.     Defendant Sunghee Janet Yang is an individual residing at 4014 Pineridge Road SE, Smyrna, Georgia 30080-5808.

### III.   JURISDICTION AND VENUE

11.     This Court has subject-matter jurisdiction over Fermi's claims under 28 U.S.C § 1331. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

12.     This Court has personal jurisdiction over each Defendant because each Defendant has minimum contacts with the United States, and Plaintiff "brings suit under the Securities Exchange Act of 1934 which authorizes nationwide service of process and requires minimum contacts with the United States." *Cortis, Inc. v. Cortislim Int'l, Inc.*, No. 3:12-CV-00562-P, 2012 WL 12885719, at *4 (N.D. Tex. Oct. 16, 2012).

13.     Additionally, at least Defendants Mr. Neugebauer and Vicksburg conduct business within this state and judicial district, maintain a residence or place of business within the same, have employees within the same, and have engaged in systematic and continuous contacts with the state of Texas. Moreover, Defendants' conduct in this judicial district gives rise to the claims at issue in this action. The activities alleged herein include soliciting proxy materials to be distributed to Fermi shareholders in this state and judicial district, for a purported meeting of a Texas corporation headquartered in this state and judicial district, to be held in this state and judicial district.

14.     Venue is proper in this district pursuant to 28 U.S.C. § 1391, including because at least one Defendant resides in this judicial district, and because a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, in this judicial district.

## IV. FACTUAL BACKGROUND

### A. The Board removed Mr. Neugebauer from his position as CEO on April 17, putting an end to his turbulent leadership.

15. Mr. Neugebauer was one of Fermi's co-founders, but the Company faced significant challenges under his leadership after it became a publicly-traded company. In private negotiations, at least one important potential counterparty informed Fermi that it would not do a deal unless Fermi agreed Mr. Neugebauer would not communicate directly with its employees. Similar challenges have been chronicled by the press.[1] Politico reported that Mr. Neugebauer confronted Commerce Secretary Howard Lutnick at the March 20 Nvidia GTC conference, during which, Mr. Neugebauer was "loud and belligerent" and security personnel had to intervene to separate the two men.[2] Bloomberg reported that at the March CERAWeek conference in Houston, Mr. Neugebauer publicly argued with Amanda Peterson Corio, Google's global head of data center energy, alienating a potential customer.[3] One analyst noted that there is "friction between customers and Mr. Neugebauer, and negotiations could be simpler" without him.[4] Another agreed that "[t]he sooner Neugebauer fades into the background, the better Fermi's chances of building at least one data center, let alone a nuclear power plant."[5]

16. On April 17, the Board held a special meeting and voted to remove Mr. Neugebauer from the positions of President and CEO, effective immediately. In doing so, the Board considered Mr. Neugebauer's conduct, his relationships with key counterparties and stakeholders, and

---

[1] Ex. 1, Houston Chron., *Texas billionaire's nuclear-powered data center company faces collapse*; Ex. 2, Statesman.com, *Texas billionaire's nuclear-powered data center company faces collapse*; Ex. 3, Seeking Alpha, *After Dropping 80%, Fermi Is Still Not Worth It*; Ex. 4, Nuclear Newswire, *CEO and CFO of Fermi America step down*; Ex. 5, Bloomberg, *AI Nuclear Power Developer Fermi Slides On CEO's Abrupt Exit*.

[2] Ex. 6, Politico, *Confrontation between billionaire CEO and Lutnick hints at trouble with huge data center project*.

[3] Ex. 1, Houston Chron., Texas billionaire's nuclear-powered data center company faces collapse.

[4] Ex. 5, Bloomberg, *AI Nuclear Power Developer Fermi Slides On CEO's Abrupt Exit*.

[5] Ex. 1, Houston Chron., *Texas billionaire's nuclear-powered data center company faces collapse*.

whether his continued service was in the Company's and shareholders' best interests. After careful deliberation, the answer to that last question was a resounding no.

17.    Following additional deliberation based on additional information about misrepresentations and misconduct by Mr. Neugebauer, on April 30, the Board's Risk and Disclosure Committee, acting pursuant to authority delegated from the Board, determined that Mr. Neugebauer should be terminated for cause pursuant to his employment agreement. In doing so, the Committee considered a multitude of Mr. Neugebauer's actions and omissions, including, but not limited to: (1) leading a misleading presentation to the Board, (2) issuing a press release in violation of his fiduciary duties, non-disclosure obligations, and Company policies, (3) conducting unauthorized meetings with third parties regarding Company transactions, (4) engaging in abusive and bullying behavior both within and outside Fermi, and (5) engaging in inappropriate conduct while representing Fermi.

18.    Pursuant to Mr. Neugebauer's employment agreement, his termination for cause also resulted in his automatic removal from Fermi's Board, without any further action required by the Company or the Board.

**B.    On the eve of his removal, Mr. Neugebauer saw the writing on the wall and purported to call the Purported Meeting to frustrate impending Board action and protect his personal interests.**

19.    In his last 24 hours as President and CEO, Mr. Neugebauer saw the writing on the wall and sought to use his remaining time in those offices to pursue his own personal agenda.

20.    On April 16, the day before the Board removed him as President and CEO, Mr. Neugebauer purported to call the Purported Meeting of Fermi's shareholders, scheduled for June 15.[6] Mr. Neugebauer admits he took this action knowing that a majority of the Board would

---

[6] Ex. 7, 2026.04.16 Neugebauer letter to Fermi Corp. Secretary.

soon remove him as CEO and did so to assist the proxy fight he was planning in his capacity as a Fermi shareholder. As his Preliminary Proxy Statement filed May 5 says:

> On April 16, 2026, Mr. Neugebauer was informed that a majority of the Fermi Board intended to remove him without cause as Chief Executive Officer. In light of the impending unplanned leadership transition . . . Mr. Neugebauer decided that shareholders deserved their first opportunity to vote on the future of Fermi. Shortly before he was removed as Chief Executive Officer, in his then-current capacity as President and Chief Executive Officer, Mr. Neugebauer formally called the Special Meeting to consider an expansion of the Board and the election of five highly qualified director candidates.

21.     On April 17, the same day the Board removed him as President and CEO, Mr. Neugebauer sent a second letter purporting to accelerate the Purported Meeting to May 29.[7]

22.     Fermi's Bylaws do generally permit the President and CEO to call a special meeting of shareholders. But they did not permit Mr. Neugebauer to take this or any other action in contravention of the Board's direction, purporting to do so while wrapped in his corporate officer's cloak but truly doing so in furtherance of his own personal agenda.

23.     Fermi's Bylaws provide that the authority of all officers is "subject to the control of the Board of Directors," including specifically that the chief executive officer's and president's authority is "[s]ubject to the direction of the Board of Directors[.]"[8]

24.     Defendants' public statements in the Preliminary Proxy Statement confirm the purpose of Mr. Neugebauer's attempt to call the Purported Meeting was to frustrate impending Board action and to protect his personal agenda at Fermi, thereby violating Fermi's Bylaws, the fiduciary duties he had at that time, and corporate principles of independence under Texas law. He had no authority to take this action contravening the Board's own authority and actions.

---

[7] Ex. 8, 2026.04.17 Neugebauer letter to Fermi Corp. Secretary.
[8] Ex. 9, Bylaws §§ 5.5, 5.8.

25.     Due to these violations, Mr. Neugebauer's request that the Company call the Purported Meeting was invalid when made, and no such meeting was properly requested or called.

**C.     Fermi's new Co-Presidents and Co-CEOs revoked, rescinded, and cancelled Mr. Neugebauer's purported request for the Purported Meeting.**

26.     Following Mr. Neugebauer's removal as CEO, the Board created an Office of the CEO and named Anna Bofa and Jacobo Ortiz as Co-Presidents and Co-CEOs.[9]

27.     Notwithstanding the fact that Mr. Neugebauer's request for the Purported Meeting was invalid when made, for clarity, Ms. Bofa and Mr. Ortiz formally revoked, rescinded, and cancelled Mr. Neugebauer's request for the Purported Meeting.[10]

28.     Defendants' public statements acknowledge they were aware that the Purported Meeting had been cancelled before they filed their Preliminary Proxy Statement. Indeed, they have specifically stated that "Mr. Neugebauer intends to challenge the Purported Meeting Cancellation."[11]

**D.     Following his departure, Mr. Neugebauer called for a sale of the Company to further his personal agenda.**

29.     On April 20, following his removal as CEO, but while still a Fermi regular employee without any officer responsibilities, Mr. Neugebauer issued an unauthorized press release calling for an "immediate" sale of the Company.[12] In the same release, he urged the Board to "conduct an immediate process, led by an independent investment bank, for the sale of the Company to a third party."[13]

---

[9] Ex. 10, 2026.04.20 Press Release (PRNewswire, *Fermi Inc. Announces "Fermi 2.0" Strategic Evolution, New Board Chairman, Leadership Transitions, and New Office Locations*).

[10] Ex. 11, 2026.05.06 Haas Letter.

[11] Ex. 12, Preliminary Proxy Statement at 5; Ex. 13, Preliminary Solicitation Statement at 4.

[12] Ex. 13, 2026.04.20 Press Release (PRNewswire, *Toby Neugebauer Incredibly Bullish on Project Matador and Calls for Sale of Company to Maximize Shareholder Value*).

[13] Ex. 13, 2026.04.20 Press Release (PRNewswire, *Toby Neugebauer Incredibly Bullish on Project Matador and Calls for Sale of Company to Maximize Shareholder Value*).

30.     The following day, on April 21, Fermi publicly rejected the call for a sale, confirming that it was "not in the best interest" of shareholders.[14] While Mr. Neugebauer may wish to pursue his own agenda of seeking retribution for personal grievances and sowing chaos, the Board believes that a sale at an 80% discount to the IPO share price is not in all shareholders' best interests. The Board, having already terminated Mr. Neugebauer's employment at the Company for cause, does not believe that it is in the best interest to restore him as leader of the Company. Customers and potential and existing commercial counterparties and financing sources have expressed support for Mr. Neugebauer's removal, indicating Fermi would now have the opportunity to achieve positive business developments and increase Fermi's value substantially beyond the price at which Mr. Neugebauer sought to sell the business.

**E.      Defendants made filings with the Securities and Exchange Commission in furtherance of the Purported Meeting they know does not exist.**

31.     On May 5, Defendants filed two documents with the SEC.

32.     The first document was a Preliminary Proxy Statement, through which Defendants intend to solicit proxies from Fermi's shareholders to vote in favor of Mr. Neugebauer's proposals at a special meeting of Fermi shareholders that (according to the Preliminary Proxy Statement) "will be held on May 29, 2026 at 9:00 a.m. Central Time at 620 S. Taylor St., Amarillo, TX 79101."[15]

33.     Pursuant to Rule 14a-6 under federal securities laws, as early as May 15, 2026—ten calendar days after filing the Preliminary Proxy Statement—Defendants may file a "definitive" proxy statement and formally commence the solicitation of proxies for a May 29 meeting that does not even exist.

---

[14] Ex. 14, 2026.04.21 Fermi Press Release.
[15] Ex. 12, Preliminary Proxy Statement at 5.

34.    Defendants' stated goals for the Purported Meeting are to (1) amend Fermi's Bylaws to increase the size of Fermi's Board, (2) elect new directors (Defendants Mr. Daglio, Mr. Elson, Ms. Hooda, Mr. Jimenez, Ms. Yang, and Mr. Neugebauer) who were handpicked by Mr. Neugebauer and his affiliated entities (Defendants Vicksburg and the Neugebauer 2020 Trust), and (3) "install a Board majority who will" consider "a potential sale" of the Company.[16] In other words, the filing expressly confirms that Mr. Neugebauer's purpose for attempting to call the Purported Meeting on his way out of the CEO office was to give himself a shortcut to wrest control of the Company through the proxy fight he planned to wage following his removal as an officer in his capacity as a shareholder.

35.    The second document, also filed with the SEC on May 5, was a Preliminary Solicitation Statement, through which Defendants intend to solicit proxies from other shareholders to join with Mr. Neugebauer to call a special meeting to be held on or around June 30, in their capacity as shareholder pursuant to Fermi's governing documents. Notwithstanding that the Preliminary Solicitation Statement's existence tacitly admits that the May 29 Purported Meeting does not exist and will not be held, it also contains false and misleading statements claiming that a special meeting previously called by Mr. Neugebauer while he was CEO will take place on May 29. Pursuant to Rule 14a-6 under the federal securities laws, as early as May 15, 2026—ten calendar days after filing the Preliminary Proxy Statement—Defendants may file a "definitive" solicitation statement.

36.    Each Defendant is a "participant" in the solicitation of proxies for the Purported Meeting as disclosed in the Preliminary Proxy Statement and Preliminary Solicitation Statement filed by the Defendants with the SEC, and each Defendant intends to furnish to Fermi shareholders

---

[16] Ex. 12, Preliminary Proxy Statement at 5, 9.

definitive proxy and solicitation materials that would include the same false and misleading statements. According to those documents, Vicksburg has agreed to indemnify Defendants Daglio, Elson, Hooda, Jimenez, and Yang against claims related to that proxy solicitation.

37.    Defendants' public statements acknowledge that they were aware the Purported Meeting had been cancelled before they filed their Preliminary Proxy Statement, including statements in the Preliminary Solicitation Statement that "Mr. Neugebauer intends to challenge the Purported Meeting Cancellation."[17]

38.    Defendants' Preliminary Proxy Statement and Preliminary Solicitation Statement are materially misleading. There is no Purported Meeting on May 29. The request was not valid when made, and in any event has since been rescinded and cancelled by the officers who assumed the offices Mr. Neugebauer held when he purported to call the meeting.

**F.    If Defendants are allowed to continue, Fermi and its shareholders will suffer.**

39.    Defendants' Preliminary Proxy Statement and Preliminary Solicitation Statement are sure to create market confusion and distract the Company from its mission-critical work of attracting a tenant. Mr. Neugebauer and the rest of the Defendants are putting their personal agendas before the best interests of Fermi's shareholders.

40.    As recently as this morning Mr. Neugebauer issued a press release "announc[ing] his completed slate" of proposed directors and claims that "[t]he nominees will stand for election at the Special Meeting of Shareholders for May 29, 2026, which Mr. Neugebauer validly called in his capacity as President and Chief Executive Officer in accordance with the Company's charter and bylaws."[18] Mr. Neugebauer also announced that "[i]n the event the board continues to defer shareholders' ability to have a voice in the Company's future and the May 29th Special Meeting is

---

[17] Ex. 12, Preliminary Proxy Statement at 5, 14; Ex. 15, Preliminary Solicitation Statement at 4, 8, 11.
[18] Ex. 16, 2026.05.08 Press Release (PRNewswire, *Toby Neugebauer Nominates Stellar Slate of Highly Qualified Independent Directors to the Fermi Board for Shareholder Consideration at Upcoming Special Meeting*.).

denied, these nominees will stand for election at a planned Shareholder Meeting to be called by Mr. Neugebauer and other shareholders, which is anticipated to be held on or around June 30, 2026, along with two additional nominees Juan A. Pujadas and Sheila Hooda."[19]

41.     If the Court does not clarify that the Purported Meeting is invalid and has been cancelled and enjoin Defendants from taking additional action to move forward with the Purported Meeting, the additional market confusion and disruptions to Fermi's business operations will irreparably harm the Company and its shareholders.

## V.     CAUSES OF ACTION

### Count 1 – Declaratory Judgment Under the Federal Declaratory Judgment Act

42.     Fermi incorporates by reference each of the foregoing paragraphs.

43.     Defendants claim in the Preliminary Proxy Statement and Preliminary Solicitation Statement that Mr. Neuegebauer, in his power as President and CEO of Fermi, validly called a special meeting of Fermi shareholders that will occur on May 29, 2026, and that Defendants and others have certain legal rights with respect to and at that purported May 29, 2026 meeting.

44.     Fermi disputes that any special meeting of Fermi shareholders has been called for May 29, 2026, both because Mr. Neugebauer's attempt to call this meeting in his prior capacities as Fermi's President and CEO was invalid, and because the persons who now occupy those offices revoked, rescinded, and cancelled Mr. Neugebauer's purported request for this meeting.

45.     There is an actual controversy between the parties in the case because the parties dispute the validity and existence of the Purported Meeting.

46.     There is no pending state court action that can resolve this dispute in its entirety and this Court has authority to grant declaratory relief.

---

[19] Ex. 16, 2026.05.08 Press Release (PRNewswire, *Toby Neugebauer Nominates Stellar Slate of Highly Qualified Independent Directors to the Fermi Board for Shareholder Consideration at Upcoming Special Meeting*.).

47.     This Court should exercise its broad discretion to decide this declaratory judgment action.

48.     The Court should issue a judgment declaring that there is no special meeting of Fermi shareholders called to be held on May 29, 2026.

### Count 2 – Violation of 17 C.F.R. § 240.14a-9; 15 U.S.C. § 78n(a)

49.     Fermi incorporates by reference each of the foregoing paragraphs.

50.     15 U.S.C. § 78n states:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title.

51.     17 C.F.R. § 240.14-9 ("Rule 14a-9") is such a rule as described in 15 U.S.C. § 78n and states:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

52.     Defendants have taken actions to solicit by means of a proxy statement, form of proxy, notice of meeting, and/or other communication, including their Preliminary Proxy Statement and Preliminary Solicitation Statement, which, at the time and in the light of the circumstances under which they were made, were false or misleading with respect to material facts.

53.     Defendants' false or misleading statements with respect to material facts in a

13

regulated solicitation include the Preliminary Proxy Statement's representation it was filed "in connection with the solicitation of proxies for the special meeting of shareholders of the Company (the [Purported Meeting]), which shall be held on May 29, 2026 at 9:00 a.m. Central Time at 620 S. Taylor St., Amarillo, TX 79101," at which time shareholders will have "their first opportunity to vote on the composition of the Board" and shall have the opportunity to amend the Bylaws of Fermi Inc.

54.     These statements are false and misleading because there is no Purported Meeting, as the calling of the Purported Meeting was invalid and Fermi's co-CEOs and co-Presidents have since revoked, rescinded, and canceled the purported calling of the Purported Meeting.

55.     Any proxy statement, form of proxy, notice of meeting, and/or other communication by Defendants soliciting proxies for the Purported Meeting is false and misleading because there is no such meeting.

56.     These statements violate Rule 14a-9.

57.     These statements cause shareholder and market confusion about the proper and legitimate method to vote for a member of the Board of Directors and amendments to the Bylaws of Fermi Inc.

58.     Because these statements contain false and misleading information, permitting their use in proxy solicitations would serve only to exacerbate shareholder and market confusion.

59.     Fermi is harmed by the aforementioned shareholder and market confusion, including because shareholders, the market, and counterparties are unsure who is or will be running the Company. It is also creating chaos and confusion in the public marketplace as to the Company's strategies and prospects at a time when Fermi is trying to conduct business with important counterparties which is critical to the long-term success of the Company.

60.     The Court should enjoin Defendants from (a) from taking any actions in furtherance

14

of holding the Purported Meeting, including but not limited to any actions to distribute or file a definitive proxy statement or other soliciting materials in connection with the Purported Meeting or to solicit proxies in connection with the Purported Meeting; (b) from engaging in any solicitation by means of any proxy statement, form of proxy, notice of meeting, or other communication, written or oral, containing any statement stating, suggesting, or indicating that the Purported Meeting has been called or will be held, and (c) from taking any other action to hold or deem to hold the Purported Meeting.

## VI.   REQUEST FOR TEMPORARY RESTRAINING ORDER

61.   Fermi incorporates by reference each of the foregoing paragraphs.

62.   A party seeking a temporary restraining order or preliminary injunction must establish four elements by a preponderance of the evidence:

> (1)   a substantial likelihood of success on the merits;
>
> (2)   a substantial threat of irreparable harm;
>
> (3)   the balance of hardships weighs in the movant's favor; and
>
> (4)   the issuance of the preliminary injunction will not disserve the public interest.

*Greer's Ranch Cafe v. Guzman*, 540 F. Supp. 3d 638, 645 (N.D. Tex. 2021).

63.   Fermi easily meets all of those requirements here. Fermi is likely to succeed on the merits because Defendants have misrepresented to investors in the Preliminary Proxy Statement and the Preliminary Solicitation Statement that the Purported Meeting was validly called and also misleadingly omitted in these same materials that the Purported Meeting has since actually been cancelled by Fermi's Office of the CEO. There is a substantial threat that irreparable injury will result if the injunction is not granted because the market confusion, ongoing reputational damage, and disruptions to Fermi's governance and business operations cannot be adequately compensated with money damages. The balance-of-hardships is completely one-sided because Defendants are

15

not entitled to mislead Fermi's shareholders or take action in furtherance of the Purported Meeting, which was not properly called and his since been cancelled. And, lastly, preventing market confusion and misleading statements serves the public interest. Because Fermi satisfies the four requirements for temporary injunctive relief, the Court should enter a temporary restraining order to prevent Defendants from further irreparably harming Fermi and its shareholders.

**A.      Fermi is likely to succeed on the merits because the Purported Meeting is not properly scheduled and Defendants' statements to Fermi's shareholders are misleading.**

**i.      Fermi is likely to succeed on the merits of its declaratory judgment claim.**

64.      "The Declaratory Judgment Act provides that, '[i]n a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'" *Frye v. Anadarko Petroleum Corp.*, 953 F.3d 285, 293–94 (5th Cir. 2019) (quoting 28 U.S.C.A. § 2201(a)).

65.      "When considering a declaratory judgment action, a district court must engage in a three-step inquiry." *Frye*, 953 F.3d at 294 (quoting *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000)). "The court must ask (1) whether an actual controversy exists between the parties in the case; (2) whether it has authority to grant declaratory relief; and (3) whether to exercise its broad discretion to decide or dismiss a declaratory judgment action." *Id.* (citation modified).

66.      *First*, "[t]he statute's requirement of a 'case of actual controversy' refers to an Article III case or controversy." *Frye*, 953 F.3d at 294 (citation omitted). "To show an actual controversy, the dispute at issue 'must be definite and concrete, real and substantial, and admit of specific relief through a decree of a conclusive character.' *Id.* "Although '[d]eclaratory judgments cannot be used to seek an opinion advising what the law would be on a hypothetical set of facts ...,

16

declaratory judgment plaintiffs need not actually expose themselves to liability before bringing suit.'" *Id.* "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* Here, an actual controversy exists between the parties. Defendants are actively misleading Fermi's shareholders and purporting to hold a Purported Meeting on May 29, to vote on expanding Fermi's Board and elect a majority of the Board to force a sale of the Company. Fermi has cancelled the Purported Meeting, which was improperly requested due to Mr. Neugebauer's self-interest. Defendants dispute this, claiming a legal right to solicit proxies for and vote at the Purported Meeting, and have stated that "Mr. Neugebauer intends to challenge the Purported Meeting Cancellation." Accordingly, there is a substantial controversy and sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

67.    ***Second***, "[a] district court lacks authority 'when 1) a declaratory defendant has previously filed a cause of action in state court against the declaratory plaintiff, 2) the state case involves the same issues as those involved in the federal case, *and* 3) the district court is prohibited from enjoining the state proceedings under the Anti-Injunction Act." *Great Lakes Ins. SE v. Horton Family Tr., LLC*, 2020 WL 6119911, at \*3 (N.D. Tex. July 9, 2020) (quoting *Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 776 (5th Cir. 1993). "The absence of any of the three factors defeats mandatory abstention, and the district court has broad discretion over whether to grant declaratory relief." *Id.* (citing *Sealed v. Sealed*, 33 F.3d 1379, 1994 WL 487245, at \*2 (5th Cir. 1994)). None of these concerns is present here. Defendants have not filed a cause of action in state court against Plaintiff involving the issues in this case. Therefore, this Court has authority to grant declaratory relief.

68. **Third**, in deciding whether to hear the declaratory action, there are "seven nonexclusive factors for a district court to consider":

> (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated;

> (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;

> (3) whether the plaintiff engaged in forum shopping in bringing the suit;

> (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;

> (5) whether the federal court is a convenient forum for the parties and witnesses;

> (6) whether retaining the lawsuit would serve the purposes of judicial economy; and

> (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 388 (5th Cir. 2003) (citing *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585 (5th Cir.1994)). "Courts ought to 'properly weigh the balance heavily in favor of exercising jurisdiction.'" *Great Lakes Ins. SE*, 2020 WL 6119911, at *3 (quoting *Nat'l Cas. Co. v. Gonzalez*, 637 F. App'x 812, 816 (5th Cir. 2016)). "Thus, when a factor is neutral, it has the effect of weighing against abstention." *Id.* Here, each factor is either neutral or favors this Court exercising its authority to decide the declaratory action. There is not a pending state action or a more convenient forum for the dispute, and adjudicating this dispute would serve the purposes of judicial economy.

69. As to the merits of the claim for declaratory judgment, the Purported Meeting was improperly called and has since been cancelled by the Office of the CEO.

18

70.    Fermi's Bylaws provide that the authority of officers is "subject to the control of the Board of Directors," including specifically that the chief executive officer's and president's authority is "[s]ubject to the direction of the Board of Directors[.]"[20]

71.    Defendants' public statements confirm that Mr. Neugebauer purported to call the Purported Meeting "[i]n light of" the fact that on April 16, 2026, he "was informed that a majority of the Fermi Board intended to remove him without cause as Chief Executive Officer."[21] These statements confirm that the purpose of Mr. Neugebauer's attempt to call the Purported Meeting was to frustrate impending Board action and to protect his personal interest in his position at Fermi, thereby violating Fermi's Bylaws and Texas law.

72.    Due to these violations, Mr. Neugebauer's request that the Company call the Purported Meeting was invalid when made, and no such meeting has been properly requested or called.

73.    Notwithstanding the fact that Mr. Neugebauer's request for the Purported Meeting was invalid when made, Ms. Bofa and Mr. Ortiz, acting in their capacities as Co-Presidents and Co-CEOs, subsequently revoked, rescinded, and cancelled Mr. Neugebauer's request for the Purported Meeting.

74.    Accordingly, the Fermi is likely to succeed on the merits of its declaratory judgment claim.

**ii.    Fermi is likely to succeed on the merits of its Rule 14a-9 claim.**

75.    Rule 14a-9 prohibits proxy statements "containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to

---

[20] Ex. 9, Bylaws §§ 5.5, 5.8.
[21] Ex. 12, Preliminary Proxy Statement at 16; Ex. 15, Preliminary Solicitation Statement at 10.

19

any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."

76. At the time Defendants filed the Preliminary Proxy Statement and Preliminary Solicitation Statement, Defendants knew that the Purported Meeting was improperly requested and had since been cancelled by Fermi's Office of the CEO.

77. Therefore, Defendants have violated Rule 14a-9 by soliciting by means of proxy statement, form of proxy, notice of meeting, and/or other communication, including their Preliminary Proxy Statement and Preliminary Solicitation Statement, which, at the time and in the light of the circumstances under which they were made, were false or misleading with respect to material facts.

78. Courts have repeatedly found—and enjoined—Rule 14a-9 violations where defendants attempt to effect or base corporate action on misleading proxy materials.

79. For instance, in *Hartman Commercial Properties REIT v. Hartman*, the defendants attempted to use written consents to remove the board. No. CV H-06-3897, 2007 WL 9751970, at *12 (S.D. Tex. Apr. 6, 2007), *aff'd sub nom. Reit v. Hartman*, 252 Fed. Appx. 631 (5th Cir. 2007). The court granted a preliminary injunction, noting that the plaintiff was likely to succeed on the merits of its Rule 14a-9 claim because the defendant's proxy materials violated the entity's governing documents and contained other misstatements. *Id*. Similarly, Fermi is likely to succeed on its Rule 14a-9 claim because the Defendants' Preliminary Proxy Statement and Preliminary Solicitation Statement seek to appoint directors through an illegitimate meeting.

80. In *Morris v. Bush*, a former board chairman, without authority, purported to convene a special meeting to replace board members and had proxies solicited. No. CIV.A.3:98-CV-2452-G, 1999 WL 58857, at *1 (N.D. Tex. Jan. 28, 1999). At the purported special meeting, directors were purportedly replaced. *Id*. at 2. The Court granted a preliminary injunction voiding

the results of purported special meeting, including because the notice for the special meeting was materially false and "violated Rule14a-9." *Id.* at 3-4. Similarly, Defendants are attempting to appoint directors at an illegitimately called meeting, and the Court should void the process.

81.    In *Studebaker Corp. v. Gittlin*, a leading case, the Second Circuit affirmed an injunction against using stockholder lists obtained in violation of Rule 14a to solicit proxies in support of changing the board at an upcoming meeting. 360 F.2d 692, 694 (2d Cir. 1966) (Friendly, J.). Similarly, Defendants are attempting to use proxy material that violates Rule 14a-9 in support of changing the board at a purportedly upcoming meeting.

82.    In *Chambers v. Briggs & Stratton Corp.*, the court granted a preliminary injunction to order the defendant not to vote proxies it solicited in violation of Rule 14a-9. 863 F. Supp. 900, 906 (E.D. Wis. 1994); *see also Lone Star Steakhouse & Saloon, Inc. v. Adams*, 148 F. Supp. 2d 1141, 1152 (D. Kan. 2001) (granting preliminary injunction to order corrections to proxy statements that violated Rule 14a-9). Defendants are trying to solicit and later vote proxies solicited in violation of Rule 14a-9, as enjoined in *Chambers*.

**B.    Fermi will suffer irreparable harm in the absence of emergency injunctive relief.**

83.    There is a substantial threat that irreparable injury will result if the injunction is not granted because the market confusion, ongoing reputational damage, and disruptions to Fermi's governance and business operations cannot be adequately compensated with money damages.

84.    News coverage and analyst reports have detailed how Fermi's stock price has fallen amid the distractions caused by Mr. Neugebauer's Preliminary Proxy Statements and Preliminary Solicitation Statement and attempts to call the Purported Meeting to force a sale of the Company.[22]

---

[22] Ex. 17, Bloomberg, *Ousted Fermi CEO Calls for Special Meeting to Expand Board*, at 1*;* Ex. 18, LA Times, *Data center startup Fermi promised nuclear power for AI. But it couldn't sign a single client*, at 3-4.

85.     Harm to business reputation and to a business's ability to operate are classic irreparable injuries: "Monetary remedies may not suffice where 'economic rights are especially difficult to calculate.' This is the case where, for example, there is injury to a party's 'operations, reputation, and goodwill.'" *Pipkin v. JVM Operating, L.C.*, 197 B.R. 47, 56 (E.D. Tex. 1996) (citations omitted); *see also Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1056 (5th Cir. 1997) ("We find the threat of injury to [Appellee]'s reputation and her ability to procure comparable employment . . . sufficient to satisfy irreparable injury."); *Walker v. Mem'l Health Sys. of E. Tex.*, No. 2:17-CV-00066-JRG, 2017 WL 514325, at *5 (E.D. Tex. Feb. 8, 2017) ("[T]he wide array of professional, reputational, and economic injuries which [plaintiff] faces is difficult to quantify, rendering a remedy at law insufficient."); *Baker Hughes Inc. v. Nalco Co.*, 676 F. Supp. 2d 547, 554 (S.D. Tex. 2009), *aff'd*, 374 F. App'x 979 (Fed. Cir. 2010) ("[T]he Court finds that, absent an injunction, Baker Hughes will suffer irreparable harm through damage to its reputation in the pertinent market.").

86.     The market confusion resulting from improper proxy materials justifies urgent relief. *E.g.*, *Studebaker*, 360 F.2d at 694 ("Because of the exigencies of time usual in contests for corporate control, both the district court and this court have considered the matter on an expedited basis."); *Hartman Commercial Properties REIT*, 2007 WL 9751970, at *12 (preliminarily enjoining attempted removal of the board by improper written consents, explaining that permitting the defendants to proceed "would cause shareholder confusion about the proper and legitimate method for the removal of trustees").

87.     The mere holding of an election based on violative proxy materials irreparably injures the corporation "in that its shareholders will have negative impressions of the [b]oard based upon allegedly false and misleading information disseminated by defendants during the proxy dispute." *Lone Star Steakhouse*, 148 F. Supp. 2d at 1150. "This kind of damage to the [b]oard's

22

reputation and concomitant decrease in the level of shareholder trust cannot be quantified and cannot be compensated in a post-vote exercise of the court's equitable power." *Id*. Here, the Board's reputation would be tarnished by a voting process that could undermine, to shareholders and other constituents and observers, their belief that the Board as it stands controls Fermi. "That the court could later undo the damage caused by an illegal proxy—by voiding the results of the election—is not an adequate alternative where, as here, the court can prevent in advance a shareholder vote to be taken on potentially misleading and incomplete information." *Chambers*, 863 F. Supp. at 906.

88.    With the Preliminary Proxy Statement and Preliminary Solicitation Statement alleging that the Purported Meeting is only three weeks away on May 29 and claiming that "Mr. Neugebauer intends to challenge the Purported Meeting Cancellation,"[23] and the fact that Mr. Neugebauer could try to file a misleading definitive proxy statement and misleading definitive solicitation statement as soon as May 15, the threat of this irreparable harm is imminent and mounting every day. Fermi is currently engaged in critical negotiations with important counterparties and business parties about the Company's businesses and finances. The chaos sowed by Defendants creates uncertainty and concern with these counterparties, making such negotiations more difficult.

89.    Accordingly, emergency relief is required to prevent irreparable harm.

**C.    The balance-of-equities is entirely one-sided in favor of granting Fermi injunctive relief.**

90.    There is no contest between the harm to Fermi in the absence of injunctive relief and the harm to Defendants if the Court grants injunctive relief. As detailed above, the harm to Fermi and its shareholders is substantial and irreparable, involving market confusion, ongoing

---

[23] Ex. 12, Preliminary Proxy Statement at 5, 14; Ex. 15, Preliminary Solicitation Statement at 4, 8, 11.

reputational damage, and disruptions to Fermi's governance and business operations, which cannot be adequately compensated with money damages.

91.    Defendants, by contrast, stand to lose nothing. They are not entitled to mislead Fermi's shareholders by taking actions in furtherance of a Purported Meeting that was improperly called and has since been cancelled. Fermi is seeking only to maintain the status quo that there is no Purported Meeting, dispel market confusion, and continue with its business operations unimpeded by these wrongful actions of its disgruntled former CEO and his associates. This will not harm Defendants.

92.    The lack of harm to Defendants also dispenses with the need for a bond. *See* FED. R. CIV. P. 65(c) ("The court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any part found to have been wrongfully enjoined or restrained."). The amount of security required "is a matter for the discretion of the trial court," and the Fifth Circuit has held district courts have discretion to "require no security at all." *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996) (citing *Corrigan Dispatch Co. v. Casa Guzman*, 569 F.2d 300, 303 (5th Cir. 1978)). Since Defendants will not suffer any harm or financial loss, no security is needed. *Greer's Ranch Cafe*, 540 F. Supp. 3d at 652 (N.D. Tex. 2021) ("The Court finds no evidence that Defendants will suffer any financial loss from a TRO, so there is no need for Plaintiffs to post security in this case."). Nonetheless, Fermi is willing to satisfy any reasonable bond set by the Court.

**D.    Granting Fermi injunctive relief is in the public interest.**

93.    Granting injunctive relief is in the public interest. The public benefits when publicly traded companies, like Fermi, are free to operate in accordance with their governing corporate law and governing corporate documents, and focus on running their businesses for the benefit of all shareholders instead of being held hostage by a disgruntled former CEO and his associates. There

24

is no conceivable threat to public interest by enjoining Defendants from misleading shareholders in furtherance of an improper meeting.

94.     By contrast, denying Fermi injunctive relief would harm the public interest. The public is harmed if individuals are allowed leeway to violate SEC rules and make misleading statements that create market confusion and disrupt business operations. Allowing Defendants to mislead Fermi's shareholders and take actions in furtherance of the Purported Meeting, which was improperly called and has since been cancelled, would contradict proper corporate governance procedures and create market confusion, impairing Fermi's ability to operate the business, pursue tenant contracts, and stabilize investor and counterparty relations. Shareholders and the public are better served by retaining the status quo and obtaining clarity that there is no Purported Meeting.

95.     Thus, the public-interest factor favors granting Fermi injunctive relief.

## VII.   PRAYER

96.     For the foregoing reasons, Fermi respectfully requests that the Court grant the following relief:

   a.     grant declaratory judgment that there is no Special Meeting of Fermi Shareholders scheduled to be held on May 29, 2026;

   b.     grant a temporary restraining order, and later a preliminary injunction and permanent injunction, enjoining Defendants from taking any actions in furtherance of holding the Purported Meeting, including but not limited to any actions to distribute or file a definitive proxy statement or other soliciting material in connection with the Purported Meeting, or to solicit proxies in connection with the Purported Meeting, or by from engaging in any solicitation by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement stating, suggesting, or indicating that the Purported Meeting has been called or will be held, or taking any other action to hold or deem to hold the Purported Meeting;

   c.     issue final judgment in Fermi's favor on all counts;

   d.     award Fermi its attorneys' fees, and such other relief in law or equity which the Court may deem just and owed to Fermi.

25

Dated May 8, 2026

Respectfully submitted,

BAKER BOTTS L.L.P.

*/s/ Danny David*
Danny David
State Bar No. 24028267
Bill Kroger
State Bar No. 11729900
Amy Pharr Hefley
State Bar No. 24046046
910 Louisiana Street
Houston, Texas 77002
(713) 229-1234
(713) 229-1522 Facsimile
danny.david@bakerbotts.com
bill.kroger@bakerbotts.com
amy.hefley@bakerbotts.com

John B. Lawrence
State Bar No. 24055825
2001 Ross Avenue, Suite 1100
Dallas, Texas 75225
(214) 883-7448
(214) 661-4873 Facsimile
john.lawrence@bakerbotts.com

ATTORNEYS FOR PLAINTIFF FERMI INC.

26