UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

FERMI INC.,

     Plaintiff,

v.

TOBY R. NEUGEBAUER, Individually
and in his Capacity as Trustee of the Melissa
A. Neugebauer 2020 Trust, et al.,

     Defendants.

No. 5:26-CV-100-H

## MEMORANDUM OPINION AND ORDER

This case is about power.  Fermi Inc. is an energy business that is building the world's largest data center campus in the Texas Panhandle.  Its co-founder, Toby Neugebauer, has strong views about the future of the company, including the makeup of its Board of Directors.  As President and CEO, Neugebauer called a special meeting of Fermi's shareholders to discuss expanding the Board and adding new directors.  Soon after, the Board removed him from his post, purported to cancel the special meeting, and later fired him for cause.  Still, Neugebauer is proceeding as if the special meeting will take place, going so far as to file SEC disclosures to begin soliciting proxies to vote for his proposals.

In recent days, Fermi applied for emergency relief barring Neugebauer and his co-defendants from doing anything to carry out the special meeting.  Dkt. No. 1.  According to Fermi, the defendants are confusing the market and distracting the company from its critical work.  Putting aside those real-world concerns, Fermi must establish a substantial likelihood that its two claims, one under the Securities Exchange Act and one for declaratory relief, will succeed on the merits.  The company has not made that showing because it is unlikely to have a cause of action.  The requests for emergency relief (Dkt. Nos. 11; 12) are denied.

1.      **Factual and Procedural Background**

     A.      **Factual Background**

        i.      **Fermi Breaks Ground in West Texas**

In the age of artificial intelligence, computing-intensive businesses need power, and they need it now.  Fermi Inc., a Texas-based energy company, wants to meet that demand. In 2025, Fermi announced Project Matador, a multi-gigawatt data center campus designed to deliver on-demand electricity to America's leading companies.  *See* Dkt. No. 20 at 231. Sitting on over 5,200 acres near Amarillo, Texas, Project Matador is secured by a ground lease on land owned by Texas Tech University.  *Id.*  Its location near one of the Nation's largest known natural gas fields and the United States' primary nuclear weapons facility represents the potential to provide flexible, grid-independent power to the AI market.  *Id.*

Toby Neugebauer is one of Fermi's co-founders.  *Id.* at 232.  Late last year, he helped shepherd Fermi through its initial public offering, which converted the company from an LLC to a Texas corporation.  He was also named Fermi's President and CEO.  *Id.* at 1046– 67.  Neugebauer appears to be Fermi's largest shareholder, holding roughly 40% of the company's stock between himself, his company Vicksburg Investments Management LLC, and the Melissa A. Neugebauer 2020 Trust.  *See id.* at 1175; *see also* Dkt. No. 1-14 at 3.

        ii.      **Neugebauer Calls a Special Meeting of Fermi's Shareholders**

After the IPO, Neugebauer's relationship with the Board of Directors began to sour. Fermi alleges that it "faced significant challenges" under Neugebauer's leadership—noting, for example, that his conduct alienated potential customers. Dkt. No. 1 ¶ 15.  For his part, Neugebauer claims that the rift developed when the Board declined to investigate "serious governance concerns" that he and other executives raised in early 2026.  Dkt. No. 19 at 11.

The conflict came to a head in mid-April.  On April 16, Neugebauer called a Special Meeting of Fermi's shareholders, exercising authority granted to him as President and CEO under Texas law and the company's governing documents.  Dkt. No. 20 at 8, 1034; *see* Tex. Bus. Orgs. Code § 21.352(a).  The stated purpose of the Special Meeting was to consider the composition of the Board, including its size and the addition of five candidates nominated by Neugebauer's company, Vicksburg Investments Management LLC.[1]  Dkt. No. 1-8 at 3–4.  Because Fermi had not yet hosted a shareholder meeting, the Special Meeting would "be the first chance for shareholder democracy since the IPO," according to later statements.  Dkt. No. 1-13 at 17.  For the five candidates, all options were on the table, including "a potential sale or strategic partnership."  *Id.*  The Special Meeting was set for May 29, 2026.[2]

### iii.    Neugebauer is Removed as President and CEO

The next day, April 17, the Board removed Neugebauer as President and CEO, effective immediately.  Dkt. No. 20 at 1301.  From that point forward, Neugebauer says he had "no alternative role, no duties, and no responsibilities."  *Id.*  Later, Fermi issued a press release announcing the leadership change as part of "Fermi 2.0."  *See* Dkt. No. 1-11 at 2–7. Neugebauer was replaced with a "new Office of the CEO" led by two Co-Presidents with joint oversight of the company's day-to-day operations.  *Id.* at 4.  While Neugebauer was no longer President and CEO, "he remain[ed] a member of the Board."  *Id.* at 3.

On the same day as the press release, Neugebauer issued his own statement calling on the Board to sell Fermi to a third party "that maximizes value for all shareholders."  Dkt.

---

[1] The candidates were Neugebauer, David A. Daglio, Charles M. Elson, John T. Jimenez, and Sunghee Janet Yang.  Dkt. No. 1-13 at 20.  All are defendants here.  Dkt. No. 1 ¶¶ 4, 6–7, 9–10.

[2] Neugebauer first scheduled the Special Meeting for June 15 before moving it up to May 29.  Dkt. Nos. 1-8 at 2; 1-9 at 2.

No. 20 at 1099–1100, 1242.  In his telling, the Board was receptive.  Dkt. No. 19 at 12.  But the company rejected the idea publicly, announcing that it had received positive feedback on Fermi 2.0 and that a sale was not in the best interest of Project Matador, its future tenants, or the long-term value to the shareholders.  Dkt. No. 20 at 1116.

### iv.  The Board's Risk & Disclosure Committee Fires Neugebauer for Cause, Prompting Litigation in State Court

The final blow came on April 30.  In a letter signed on behalf of the Board's Risk & Disclosure Committee, the company fired Neugebauer for cause.  *Id.* at 1156–57.  For-cause termination, the letter explained, followed from Neugebauer's alleged misrepresentations, unauthorized communications with the media, and other kinds of "inappropriate conduct." *Id.* at 1156.  Citing Neugebauer's employment agreement, the letter also noted that for-cause termination meant that he was "automatically removed from the Board."  *Id.* at 1156–57.

Litigation kicked into high gear.  The day after he was fired, Neugebauer sued Fermi and three of its directors in the Texas Business Court.  *See* Dkt. No. 18-3.  That suit sought, among other things, emergency injunctive relief preventing the defendants from excluding Neugebauer from the Board.  *Id.* at 1.  As the argument went, Neugebauer's removal from the Board was invalid under both Texas law and Fermi's governing documents, which reportedly vest exclusive removal authority in the company's shareholders.[3]  *Id.* at 4.

Critically, Neugebauer contends that Fermi's response in the state lawsuit revealed— for the first time—that the May 29 Special Meeting had been canceled by the Office of the CEO.  Dkt. No. 19 at 13; *see* Dkt. No. 1 ¶ 27.  Fermi later confirmed the purported cancellation.  Dkt. No. 1-12 at 2–3 ("[F]ollowing your removal as CEO, Anna Bofa and

---

[3] Neugebauer withdrew his request for emergency relief.  *See* Dkt. No. 20 at 1191–93.  The lawsuit otherwise remains pending.

Jacobo Ortiz, in their capacities as Co-Presidents and Co-CEOs, revoked, rescinded and canceled your purported request for the [Special] Meeting."). Neugebauer claims that he was never told about the cancellation after he was removed as CEO and while he was still on the Board. Dkt. No. 19 at 13. In his view, the Special Meeting must proceed as planned.

### v.    Neugebauer Files Preliminary Proxy Materials with the SEC

On May 5, four days after he sued Fermi in the Texas Business Court, Neugebauer filed two documents with the U.S. Securities and Exchange Commission (SEC). The first—a Preliminary Proxy Statement—demonstrated Neugebauer's intent to solicit proxies from Fermi's shareholders to vote for his proposals at the Special Meeting, which "will be held on May 29, 2026." *See* Dkt. No. 1-13. The Statement was clear that the solicitation came from Neugebauer and his affiliated entities—not Fermi or its Board. *Id.* at 4. And it did not shy away from detailing the ongoing dispute about the Special Meeting. *Id.* at 5 (noting that the company has "taken the extraordinary step of purporting to cancel the Special Meeting").

The second document—a Preliminary Solicitation Statement—proposed a shareholder-called special meeting on or around June 30 that would allow shareholders to vote on Neugebauer's proposals if the cancellation of the May 29 Special Meeting were to stand. Dkt. No. 1-16 at 5–6. Again, this Statement did not bury the lead: "Mr. Neugebauer intends to challenge the Purported Meeting Cancellation and fight to protect shareholders' rights to vote on the director candidates and other proposals properly submitted at the May 29 Meeting." *Id.* at 4. Both Statements use similar wording. *See* Dkt. No. 1-13 at 5.

Under Rule 14a-6, as early as May 15—ten days after filing the Preliminary Proxy Statement—Neugebauer may file a definitive proxy statement and formally begin soliciting proxies for the May 29 Special Meeting. *See* 17 C.F.R. § 240.14a-6(a). Allowing

Neugebauer to proceed, Fermi argues, would give license to a "phantom meeting" that (1) was invalid when declared, and (2) has since been cancelled.  Dkt. No. 1 ¶¶ 1, 38.

### B.    Procedural Background

With the May 15 deadline approaching, Fermi sued in this Court on May 8.  *See id.* Its complaint includes an application for TRO and request for preliminary injunction.  *Id.* ¶ 96.  Put simply, Fermi says that Neugebauer is "wag[ing] a campaign to wrest control of the Company from its Board of Directors" so he can sell the business for his personal benefit at the expense of its shareholders.  *Id.* ¶ 1.  As Neugebauer sees it, this case concerns "incumbent directors" who are silencing "corporate democracy" so they can "focus on their agenda."  Dkt. No. 19 at 8–9.  On either view, this suit involves weighty questions about Fermi's corporate governance and the rights of its shareholders.

Fermi alleges two "Causes of Action" against Neugebauer, Vicksburg Investments Management LLC, and five other Neugebauer-backed candidates.  Dkt. No. 1 ¶¶ 4–10, pgs. 12–15; *see also supra*, n.1.  Count One seeks a declaratory judgment under the Declaratory Judgment Act that "there is no special meeting of Fermi shareholders called to be held on May 29, 2026."  Dkt. No. 1 ¶¶ 42–48; *see* 28 U.S.C. § 2201.  Count Two alleges violations of Section 14(a) of the Securities Exchange Act of 1934.  Dkt. No. 1 ¶¶ 49–60; *see* 15 U.S.C. § 78n(a).  That statute, as implemented by Rule 14a-9, prohibits soliciting proxies with materially false or misleading statements.  *See* 17 C.F.R. § 240.14a-9(a).  Besides the declaratory judgment, Fermi requests an injunction barring the defendants from doing anything to carry out the Special Meeting, including by soliciting proxies or making statements indicating that the Special Meeting will take place.  Dkt. No. 1 ¶ 60.

Shortly after the complaint was filed, the Court ordered Fermi to serve the defendants with its request for injunctive relief as soon as possible. Dkt. No. 14 at 1. Considering Fermi's claims of irreparable harm, the Court put the parties on an expedited briefing schedule so it could resolve the application for TRO by no later than May 14—the day before Neugebauer can file a definitive proxy statement with the SEC. *Id.* at 1–2.

Neugebauer and his company responded to the application for TRO on May 10. *See* Dkt. No. 19. They also moved to dismiss under the doctrine of *forum non conveniens*, arguing that a forum-selection clause in Fermi's Certificate of Formation requires the company to bring this case in the Texas Business Court.[4] Dkt. No. 17. The other defendants adopted both the response and the motion to dismiss. Dkt. No. 23. Additional filings ensued. *See* Dkt. Nos. 27; 37; 39; 40. Both parties' requests are fully briefed.

## 2.    Legal Standard

Federal Rule of Civil Procedure 65 governs injunctions and restraining orders. A temporary restraining order, or TRO, is "simply a highly accelerated and temporary form of preliminary injunctive relief." *Hassani v. Napolitano*, No. 3:09-CV-1201, 2009 WL 2044596, at *1 (N.D. Tex. July 15, 2009). Thus, the party seeking a TRO must satisfy the same four elements for obtaining a preliminary injunction: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm; (3) the balance of hardships weighs in the applicant's favor; and (4) issuing the injunction will not disserve the public interest. *Daniels Health Scis., LLC v. Vascular Health Scis., LLC*, 710 F.3d 579, 582 (5th Cir. 2013).

---

[4] In the alternative, the defendants ask the Court to abstain in favor of the ongoing proceeding in the Texas Business Court or otherwise transfer this case to the Dallas Division. Dkt. No. 17 at 22–29.

A TRO, like all injunctive relief, is an "extraordinary remedy." *Lewis v. S.S. Baune*, 534 F.2d 1115, 1121 (5th Cir. 1976). "The decision to grant [such relief] 'is to be treated as the exception rather than the rule.'" *Jones v. Bush*, 122 F. Supp. 2d 713, 718 (N.D. Tex. 2000) (quoting *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985)). To prevail, the applicant "must satisfy a cumulative burden of proving each of the four elements" for injunctive relief. *Greer's Ranch Café v. Guzman*, 540 F. Supp. 3d 638, 645 (N.D. Tex. 2021) (quotation omitted). Put differently, if the applicant fails to meet any of the four elements, the court cannot grant the TRO. *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985). The first element—likelihood of success on the merits—is "the most important." *United States v. Abbott*, 110 F.4th 700, 706 (5th Cir. 2024) (quoting *Mock v. Garland*, 75 F.4th 563, 587 n.60 (5th Cir. 2023)).

3.      **Analysis**

At this stage, Fermi has not shown a substantial likelihood of success on the merits. First, it is unlikely that Fermi has an implied private cause of action against the defendants under Section 14(a) of the Securities Exchange Act. According to the Fifth Circuit, that statute is only meant to protect the voting rights of shareholders, and the Supreme Court prohibits implying causes of action when it is inconsistent with statutory intent. Second, Fermi does not have an independent cause of action under the Declaratory Judgment Act. Without a viable cause of action under Section 14(a), Fermi cannot assert a freewheeling claim for declaratory relief short of identifying a cause of action that the defendants could themselves bring against Fermi. The company has not yet made that showing.

Because those preliminary conclusions are fatal to Fermi's request for emergency injunctive relief, the Court need not address the remaining factors. *See Enter. Int'l, Inc.*, 762

F.2d at 472.  Nor is this Order meant to suggest anything about the pending motion to dismiss.  *See* Dkt. No. 17.  Today's expedited decision resolves Fermi's request under the stringent rubric for emergency relief—nothing more.

> **A.    It is unlikely that Fermi has an implied private cause of action to sue for alleged violations of Section 14(a) and Rule 14a-9.**

The Securities Exchange Act of 1934, 15 U.S.C. §§ 78a–78qq, "promote[s] honest practices" in the trading of securities on national stock exchanges.  *Cyan, Inc. v. Beaver Cnty. Emps. Ret. Fund*, 583 U.S. 416, 421 (2018).  Fermi invokes Section 14(a) of the Act, which makes it "unlawful for any person, . . . in contravention of such rules and regulations as the [SEC] may prescribe[,] . . . to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security."  15 U.S.C. § 78n(a)(1).  Rule 14a-9, an SEC regulation that implements Section 14(a), states that "[n]o solicitation subject to this regulation shall be made by means of any proxy statement, . . . containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact."  17 C.F.R. § 240.14a-9(a).

Section 14(a) does not include an express private cause of action allowing a plaintiff to sue a defendant who violates the SEC's implementing regulations.  *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 391 (1970).  The omission is notable.  For one, the Securities Exchange Act does confer express causes of action for "a range of other deceptive actions" like "'short-swing trading'" and price manipulation.  *Lee v. Fisher*, 70 F.4th 1129, 1136 (9th Cir. 2023) (en banc) (citing 15 U.S.C. §§ 78i(f), 78p(b), 78r(a)).  More importantly, the absence of an express cause of action signals that Congress did not mean for Section 14(a) to be enforced through private lawsuits.  *Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001).  Without such statutory intent, "a cause of action does not exist[,] and courts may not create one."  *Id.*

Nevertheless, in *J.I. Case Co. v. Borak*, the Supreme Court held that Section 14(a) includes an implied private cause of action allowing a shareholder—suing directly or derivatively—to seek redress for injuries caused by a false and misleading proxy statement in violation of Rule 14a-9.  377 U.S. 426, 431–33 (1964).  The plaintiff in *Borak* was a shareholder who sued the directors of a corporation under Section 14(a) for circulating a false and misleading proxy statement to secure approval for a merger.  *Id.* at 427.  The Supreme Court conceded that the statute "makes no specific reference to a private right of action."  *Id.* at 432.  Yet it held that courts must "be alert to provide such remedies as are necessary to make effective the congressional purpose" behind the statute.  *Id.* at 433.  That purpose, according to the legislative history on which the Supreme Court relied, was to advance the "free exercise of the voting rights of stockholders" because "[f]air corporate suffrage is an important right that should attach to every equity security bought on a public exchange."  *Id.* at 431 (quoting H.R. Rep. No. 1383, 73d Cong., at 13–14).  Implying a private cause of action, the reasoning went, was "necessary to achieve that result."  *Id.* at 432.  The Supreme Court also relied on the SEC's admission that it lacked the time to corroborate the facts set out in proxy material.  *Id.*  "Private enforcement of the proxy rules," the Supreme Court concluded, would therefore "provide[] a necessary supplement to [SEC] action."  *Id.*  With these policy goals in mind, the Supreme Court allowed the shareholder's suit to proceed.

Despite its broad pronouncements of congressional purpose, the *Borak* Court was clear about the scope of its holding.  The "sole question raised" in the case was whether there is a cause of action available to a "corporate stockholder" who alleges a violation of Section 14(a)'s prohibition on false and misleading proxy statements.  *Id.* at 428.  The

– 10 –

Supreme Court expressly declined to "consider other questions," *id.*, and it did not hold that an issuer corporation could also avail itself of an implied cause of action.

Those caveats, however, did not save *Borak* from criticism.  In the decades that followed, the Supreme Court rebuked *Borak*'s policy-driven approach to divining implied causes of action.  Today, the focus is on the text.  Rather than try to deduce congressional purpose, courts must interpret the statute Congress passed "to determine whether it displays an intent to create not just a private right but also a private remedy."  *Alexander*, 532 U.S. at 286; *see also Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979) ("The question of the existence of a statutory cause of action is, of course, one of statutory construction.").  Without a statutory intent to open the courthouse doors to private litigants, courts may not take it upon themselves to create a cause of action, "no matter how desirable that might be as a policy matter, or how compatible with the statute."  *Alexander*, 532 U.S. at 287.

That approach makes sense.  After all, "there is 'no federal general common law.'" *Rodriguez v. FDIC*, 589 U.S. 132, 136 (2020) (quoting *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).  The decision to authorize enforcement of federal substantive law through private lawsuits—and to accept the consequences that come with them—is reserved to the legislative branch.  *Alexander*, 532 U.S. at 286; *see id.* at 287 ("Raising up causes of action where a statute has not created them may be a proper function for common-law courts, but not for federal tribunals." (quoting *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 365 (1991) (Scalia, J., concurring in part and concurring in judgment))).  Just because Congress has granted jurisdiction to federal courts does not give them license to

– 11 –

create causes of action that the statutory text does not reveal.[5]  *Tex. Indus., Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640–41 (1981).  The modern focus on statutory intent "helps courts stay in their lane" by barring reliance on "'independent policy judgment[s] to recognize a cause of action that Congress has denied'" or "'limit[ing] a cause of action that Congress has created.'"  *Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 497 (5th Cir. 2020) (en banc) (Oldham, J., concurring) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014)).  In other words, the days of *Borak* are long gone.

This reconceptualization of implied causes of action has found its way to Section 14(a).  Indeed, the Supreme Court has refused to "appl[y] *Borak*'s method for discerning and defining causes of action" when "interpreting the same Securities Exchange Act of 1934 that was at issue" in that case.  *Alexander*, 532 U.S. at 287; *see Touche Ross & Co.*, 442 U.S. at 577 ("[W]e decline to read [*Borak*] so broadly that virtually every provision of the securities Acts gives rise to an implied private cause of action.").  And the Supreme Court has rejected "any congressional urgency to depend on implied private actions to deter violations of [Section] 14(a)," given that Congress chose to include express causes of action in other parts of the Securities Exchange Act.  *Va. Bankshares, Inc. v. Sandberg*, 501 U.S. 1083, 1104 (1991) (citing 15 U.S.C. §§ 78i(e), 78p(b), 78r(a)); *see Touche Ross & Co.*, 442 U.S. at 572.

For example, in *Virginia Bankshares*, minority shareholders challenged proxy materials issued in connection with a proposed merger, even though their votes were not required to effectuate the merger.  501 U.S. at 1088–89.  The Supreme Court refused to

---

[5] That is why the Court can have jurisdiction over this case while still concluding that Fermi is unlikely to have a viable cause of action under Section 14(a).  *See* 15 U.S.C. § 78aa; *Harris County v. MERSCORP Inc.*, 791 F.3d 545, 552 (5th Cir. 2015) ("[E]stablishing the court's jurisdiction and the litigants' right of action are two requirements that must be satisfied independently.").

extend *Borak*, holding that the minority shareholders could not pursue their Section 14(a) claim because their votes were not "legally required to authorize the action proposed." *Id.* at 1102. Thus, under *Virginia Bankshares*, a party whose vote is unnecessary to approve a corporate action does not have an implied cause of action under Section 14(a). Litigants who wish "to enlarge the scope of the [*Borak*] action" must "recognize the hurdle" they face. *Id.* at 1104 n.11.

Against that backdrop, Fermi asks the Court to conclude that the company—as an issuer,[6] not a voting shareholder—has an implied cause of action to seek injunctive relief against the defendants for alleged violations of Rule 14a-9.[7] That is unlikely the case.

To start with the obvious, *Borak* does not greenlight Section 14(a) suits by issuers to redress false and misleading proxy statements. *Borak* expressly confined its holding to the question presented: whether a shareholder can sue under the statute. 377 U.S. at 428. In holding that shareholders have both a direct and derivative cause of action under Section 14(a), the Supreme Court did not purport to extend that same benefit to issuers. *See id.* at 431. As the Supreme Court clarified years later, *Borak* did not "define the class of plaintiffs eligible to sue under [Section] 14(a)." *Va. Bankshares*, 501 U.S. at 1099. *Borak*'s "general holding" was instead "that a private cause of action was available to *some shareholder class*." *Id.* (emphasis added). So *Borak*, standing alone, does not support Fermi's cause of action.

---

[6] Fermi, a publicly traded company, is an issuer under the Securities Exchange Act. *See* 15 U.S.C. § 78c(8) (defining "issuer" as "any person who issues or proposes to issue any security").

[7] The parties (and some case law) frame the issue as one of statutory standing. The answer is the same whether the issue concerns statutory standing or the availability of a private cause of action. *Simmons v. UBS Fin. Servs., Inc.*, 972 F.3d 664, 666 (5th Cir. 2020) (explaining that statutory standing asks whether a cause of action authorizes an injured plaintiff to sue).

Nor does *Virginia Bankshares*.  In fact, that case casts strong doubt that an issuer without voting rights may maintain a Section 14(a) action for false and misleading proxy statements.  Again, the Supreme Court emphasized that the plaintiff shareholders could not rely on *Borak* because their votes were not "legally required to authorize the action proposed."  *Id.* at 1102.  As the en banc Ninth Circuit recently explained, "[b]ecause the shareholders, not the corporation itself, vote to approve corporate transactions, this rule [from *Virginia Bankshares*] implies that the corporation lacks standing to sue under [Section] 14(a) for a misleading proxy statement it has issued to its own shareholders."  *Lee*, 70 F.4th at 1149.  While Fermi is not suing based on misrepresentations in its own proxy statement, the reasoning still stands: "[V]oting rights are critical to standing under [S]ection 14(a)." *7547 Corp. v. Parker & Parsley Dev. Partners, LP*, 38 F.3d 211, 230 (5th Cir. 1994).

Citing *Virginia Bankshares*, the Fifth Circuit explained in *7547 Corp.* that it "view[s] [S]ection 14(a) as protecting only interest-holders with voting rights."  *Id.* at 229–30 (citing 501 U.S. at 1106–08; then citing *United Paperworkers Int'l Union v. Int'l Paper Co.*, 985 F.2d 1190, 1198 (2d Cir. 1993)).  It "goes too far," the Fifth Circuit held, "to allow persons not even entitled to vote to assert a claim" under Section 14(a).  *Id.* at 230.  In finding a private cause of action in *Borak*, the Supreme Court could not have "intended to open a Pandora's box by extending that right to any person potentially injured by a proxy statement."  *Id.* Here, Fermi has made no claim that it possesses voting rights, and it probably never could. *See* Tex. Bus. Orgs. Code § 6.152(a) ("[A]n ownership interest owned by the domestic entity that is the issuer of the interest, or by its direct or indirect subsidiary, may not be: (1) directly

or indirectly voted at a meeting . . . .").  Thus, an issuer corporation with no voting rights in its own stock is unlikely to have a cause of action under Section 14(a).[8]

At this stage, Fermi has not tried to establish an implied cause of action under the Supreme Court's modern framework.  *See Alexander*, 532 U.S. at 286–87.  Instead, Fermi relies on the fact that it seeks a declaratory judgment.  Dkt. No. 27 at 7–8.  In Fermi's view, it is "immaterial" whether it has a cause of action under the Securities Exchange Act because it seeks a "declaration of non-liability."  *Id.* at 7 (quotation omitted).  But the case Fermi cites for that proposition, *KBR Inc. v. Chevedden*, proves why it is wrong.

At issue in *KBR Inc.* was a different SEC regulation: Rule 14a-8.  776 F. Supp. 2d 415, 417 (S.D. Tex. 2011), *clarified on denial of reconsideration sub nom. KBR v. Chevedden*, Civ. A. No. H-11-0196, 2011 WL 6033039 (S.D. Tex. Dec. 5, 2011).  That regulation allows a shareholder to force management to include a proposed resolution in the company's own proxy statement, subject to some requirements and exceptions.  *See* 17 C.F.R. § 240.14a-8. The regulation also requires the company to abide by various procedures before excluding the proposal.  *See id.*  In *KBR Inc.*, the defendant shareholder submitted a proposal for inclusion in the plaintiff company's proxy statement for its annual shareholder meeting.  *See* F. Supp. 2d at 417.  Declining to include the shareholder's proposal in its proxy materials, the company sued in the Southern District of Texas, seeking a declaratory judgment that it could lawfully exclude the proposal under Rule 14a-8.  *Id.* at 419, 426.

---

[8] The Court's conclusion is consistent with the well-reasoned decisions of two other judges in this district.  *Tenet Healthcare Corp. v. Cmty. Health Sys., Inc.*, 839 F. Supp. 2d 869, 870–72 (N.D. Tex. 2012) (Lynn, J.); *Ashford Hosp. Prime Inc. v. Sessa Cap. (Master) LP*, No. 3:16-CV-527, 2017 WL 2955366, at *9 (N.D. Tex. Feb. 17, 2017) (Godbey, J.); *accord Forte Biosciences, Inc. v. Camac Fund, LP*, No. 3:23-CV-2399, 2024 WL 2946584, at *1–2 (N.D. Tex. June 11, 2024) (Godbey, C.J.).

The district court rejected the shareholder's argument that the company lacked standing to proceed under the Declaratory Judgment Act. *Id.* at 426–27. The district court reasoned that the declaratory defendant (the shareholder) had an implied cause of action to sue the declaratory plaintiff (the company) for refusing to include his proposal. *Id.*; *see id.* at 425–26 (noting the "'well-settled' proposition that [S]ection 14(a) provides a private cause of action to enforce Rule 14a-8"). Therefore, the company could seek a declaratory judgment that it properly excluded the proposal because the shareholder's own ability to challenge the exclusion created "uncertainty warranting judicial resolution." *Id.* at 427. On that view, it was "immaterial" whether the company had statutory standing to sue under the Securities Exchange Act itself. *Id.* (quoting *May Dep't Stores v. Emps. Ret. Sys. of Ala.*, No. 93 Civ. 0879, 1993 WL 362389, at *2 (S.D.N.Y. Sept. 14, 1993)).

All of that, of course, is blackletter law. The cause of action that is "actually litigated" in a classic declaratory judgment suit "is the underlying cause of action of the defendant against the plaintiff." *Collin County v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 171 (5th Cir. 1990). In other words, the declaratory plaintiff effectively borrows the cause of action that would be asserted against it by the declaratory defendant in a future lawsuit. *See Lowe v. Ingalls Shipbuilding*, 723 F.2d 1173, 1179 (5th Cir. 1984); *see also City of Reno v. Netflix, Inc.*, 52 F.4th 874, 879 (9th Cir. 2022) (noting the "well-established availability" of the Declaratory Judgment Act "for defensive use against anticipated claims"). The declaratory plaintiff then litigates that cause of action to get an "early adjudication of an actual controversy." *Collin County*, 915 F.2d at 170. It makes sense, then, why the company in *KBR Inc.* could seek a declaratory judgment. Because the

shareholder could sue the company for refusing to *include* his proposal, the company could rely on that same cause of action to obtain a ruling on its decision to *exclude* the proposal.

That is not the situation here. Fermi seeks a declaratory judgment that the Special Meeting is not scheduled for May 29, but it has not identified a federal cause of action that would allow the defendants to sue the company over the purported cancellation. *See Lowe*, 723 F.2d at 1179. It cannot be Rule 14a-8, since that provision concerns a company's exclusion of a shareholder proposal from its own proxy statement. *Cf.* Dkt. No. 1-13 at 4 (noting that the solicitation of proxies for the Special Meeting is not being made "on behalf of the Company or the Board or management of the Company"). Nor is Rule 14a-9 a likely candidate, since there is no allegation that the purported cancellation of the Special Meeting came in a "solicitation" subject to the regulation. *See* 17 C.F.R. § 240.14a-9(a). At most, Fermi notes that Neugebauer demanded that it "schedule, duly notice, convene, hold, and complete the Special Meeting." Dkt. No. 27 at 7 (quoting Dkt. No. 1-8 at 2). But those demands came in his April 16 letter calling the Special Meeting, not a lawsuit. And while Neugebauer "intends to challenge the Purported Meeting Cancellation," as far as the Court is aware, he has not yet done so. *Id.* In short, Fermi does not explain how the defendants "would have standing to sue Fermi for its refusal" to hold the Special Meeting. *Id.* At this point, more is required to demonstrate a substantial likelihood of success on the merits.

Next, Fermi argues that the defendants' cause-of-action argument "inverts securities law" because it clashes with the availability of a derivative claim under Section 14(a). *Id.* at 8. But what Fermi sees as a flaw is actually a reason for hope. While Fermi cannot likely challenge false and misleading proxy statements via its own implied cause of action, there is still the possibility of a shareholder derivative action. *Borak* clearly held that a shareholder

could seek redress for violations of Rule 14a-9 either directly or derivatively.[9]  377 U.S. at 431.  "A derivative suit is brought by shareholders to enforce a claim on behalf of the corporation."  *Burks v. Lasker*, 441 U.S. 471, 477 (1979).  Thus, a shareholder derivative suit may serve the same function as a direct claim by the issuer.

Finally, Fermi cites a mix of cases that it argues establish the availability of a cause of action for an issuer in these circumstances.  Dkt. No. 27 at 8 & n.2.  Chief among them is *Studebaker Corp. v. Gittlin*, a Second Circuit decision from 1966—two years after *Borak* was decided.  360 F.2d 692 (2d Cir. 1966).  While *Studebaker* concludes that an issuer may sue under Section 14(a), *id.* at 695, that decision is best understood as a product of its times.  It cited *Borak* with approval, and it came decades before *Virginia Bankshares* narrowed *Borak*'s reasoning.  That is reason enough to discount *Studebaker*'s logic today.  *See Tenet*, 839 F. Supp. 2d at 872.  What's more, the Court must be cautious with extending precedent that the Supreme Court has expressly repudiated, although not formally overruled.  While the Court must decide every case based on a faithful application of binding precedent, it should not extend suspect case law that the Supreme Court has questioned itself.  *See, e.g.*, *Williams v. Homeland Ins. Co. of N.Y.*, 18 F.4th 806, 818–19 & n.1 (5th Cir. 2021) (Ho, J., concurring); *Alexander*, 532 U.S. at 287 (describing *Borak* as part of an "*ancien regime*" that the Supreme

---

[9] The Court recognizes the tension here.  Typically, a derivative action invokes a right "that the corporation or association may properly assert but has failed to enforce."  Fed. R. Civ. P. 23.1(a).  So it may seem odd that a shareholder derivative action can employ a cause of action that the corporation lacks.  But *Borak*'s holding about the availability of a derivative suit is still good law.  *See Touche Ross & Co.*, 442 U.S. at 577 (declining to "question the actual holding" of *Borak*).  While that holding is suspect after *Virginia Bankshares*, lower courts must adhere strictly to Supreme Court precedent, leaving it to the Justices to overrule their own decisions.  *Mallory v. Norfolk S. Ry. Co.*, 600 U.S. 122, 136 (2023).  Lastly, while at least one court has labeled *Borak*'s derivative-action holding as dicta, *see Lee*, 70 F.4th at 1146, courts in this circuit are "generally bound by Supreme Court dicta."  *Siders v. City of Brandon*, 123 F.4th 293, 304 (5th Cir. 2024) (quotation omitted).

Court "abandoned").  For the same reasons, Fermi's other cases—which are largely out of circuit and do not directly address the issuer's cause of action—do not move the ball.

*       *       *

In short, it is unlikely that Fermi has an implied cause of action to sue the defendants for allegedly making false and misleading proxy statements in violation of Rule 14a-9.  The company has not shown a substantial likelihood of success on the merits of its Section 14(a) claim, and emergency injunctive relief is therefore unavailable.

**B.      Without a substantive cause of action, Fermi's request for declaratory relief likely fails.**

All that is left is Fermi's claim under the Declaratory Judgment Act, 28 U.S.C. § 2201.  *See* Dkt. No. 1 ¶¶ 42–48.  That statute states: "In a case of actual controversy within its jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  The Declaratory Judgment Act "is remedial only." *Collin County*, 915 F.2d at 170.  In other words, while the Act expands the menu of available remedies, it "does not create a federal cause of action."  *Harris County*, 791 F.3d at 552; *see also Schilling v. Rogers*, 363 U.S. 666, 677 (1960) ("[T]he availability of [declaratory] relief presupposes the existence of a judicially remediable right.").  Thus, a party's request for declaratory relief depends on its ability to assert a viable substantive cause of action.  *Collin County*, 915 F.2d at 171.  It follows that "a plaintiff may not obtain a declaratory judgment under a statute . . . that provides no private right of action."  *Dallas County v. MERSCORP, Inc.*, 2 F. Supp. 3d 938, 947 (N.D. Tex. 2014); *see Harris County*, 791 F.3d at 552–53.

That is the case here.  Fermi is unlikely to show that it has an implied private cause of action under the Securities Exchange Act.  *Cf.* Dkt. No. 27 at 7 (Fermi noting that it seeks

– 19 –

a declaratory judgment for violations of Section 14(a)).  Besides a "claim" for relief under

the Declaratory Judgment Act,[10] Fermi alleges no other substantive federal cause of action

for which the Court may grant declaratory relief.  In that situation, where there is no

underlying cause of action to litigate, a declaratory judgment is unavailable.  *Val-Com*

*Acquisitions Tr. v. CitiMortgage, Inc.*, 421 F. App'x 398, 400–01 (5th Cir. 2011).

    And, as explained above, Fermi has not identified a potential cause of action by the

defendants—as is needed in a freestanding "defensive" declaratory judgment action—that

would allow the Court to consider issuing declaratory relief.  *City of Reno*, 52 F.4th at 878–

79; *supra*, Section 3.A; *see also Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914, 932 (5th Cir.

2023) ("[S]o long as the defendant in a declaratory judgment suit can sue the plaintiff for an

action the defendant is responsible for (within the scope of the proposed cause of action),

the independent cause of action required for a declaratory judgment claim exists.").  Thus,

Fermi does not have a substantial likelihood of success on the merits of its request for relief

under the Declaratory Judgment Act.

### 4.    Conclusion

    Fermi has not shown clear entitlement to the extraordinary and drastic remedy of an

emergency injunction.  Because it is unlikely that the company has an implied cause of

action under the Securities Exchange Act, both the substantive claim and the request for

relief under the Declaratory Judgment Act do not have a substantial likelihood of success on

---

[10] The complaint frames the request for declaratory relief as one of two "Causes of Action."  Dkt. No. 1 at 12.  Again, the Declaratory Judgment Act does not create a cause of action.  *Harris County*, 791 F.3d at 552.  So the Court construes the request for declaratory relief as a theory of recovery on the Section 14(a) claim.  *See* Dkt. No. 1 ¶ 49 (incorporating preceding paragraphs); *Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.*, 99 F.3d 746, 752 n.3 (5th Cir. 1996).

the merits.  The Court can stop there.  The application for TRO and the request for preliminary injunction (Dkt. Nos. 11; 12) are denied.

The motion to dismiss (Dkt. No. 17) remains pending.

So ordered on May 13, 2026.

_____
JAMES WESLEY HENDRIX
UNITED STATES DISTRICT JUDGE

– 21 –